# LAW OFFICES OF WILLIAM CAFARO

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX
Email: *bcafaro@cafaroesq.com*

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: *akumar@cafaroesq.com*

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
www.cafaroesq.com

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: *lleon@cafaroesq.com*

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

November 13, 2020

*Via ECF*
Hon. Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Memo Endorsed: The parties' settlement agreement is approved by the Court.

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge
Dated: December 3, 2020

Re: Hernandez v. Medi Winebar, LLC et al
Case No.: 19-cv-1295 (PGG) (SLC)

Your Honor:

We represent the named Plaintiff Marcial Hernandez ("Plaintiff") in the above-referenced case brought pursuant to, *inter alia*, the Fair Labor Standards Act ("FLSA") and New York Labor Law "NYLL"), against Defendants Medi Winebar, LLC, 9th Ave Blue LLC d/b/a Blue Seafood & Eatery, Dorian Gashi and Andrea Giacomoni (collectively as "Defendants") (Defendants, with Plaintiffs, as the "Parties"). We submit this letter, on behalf of all Parties, consistent with *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the Parties' settlement agreement, a copy of which is attached hereto as **Exhibit 1.** As explained further below, the Parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

   **I.    Preliminary Statement**

The Plaintiff filed this complaint on February 1, 2019, seeking, damages for unpaid minimum wages under the NYLL, overtime wages under the FLSA and NYLL, and spread of hours under NYLL as well as for recording keeping violations under the NYLL. Plaintiffs alleges that Defendants owned and operated wine bar and seafood restaurants and employed Plaintiff from April 1, 2011 through on or about October 20, 2017.

Plaintiff's FLSA claims, which have a three year of statute of limitation, are the only claims for which a Cheeks motion is actually required. Based on these claims, including those in which Plaintiff maintains that he worked between 67 hours and 76 hours per week without being paid overtime premiums of 1.5 times his regular hourly rate, Plaintiff has $14,755.50 in actual damages

for overtime violations and $14,755.50 in liquidated damages, for a grand total of $29,511.00. These calculations represent the best-case scenario for Plaintiff's FLSA claims.

Defendants vehemently deny all of Plaintiff's allegations, and do not admit to any wrongdoing or violation of the law. Defendants state that at all times relevant to this lawsuit they paid Plaintiff correctly under the law. Furthermore, they claim that Plaintiff's alleged work hours are greatly exaggerated.

## II. The Settlement Reached Between the Parties

After close to 2 years of litigation, the parties were able to arrive at a settlement of **$47,500**, which is $17,989 more than the best-case scenario of Plaintiff's FLSA claims.[1] With respect to the release language in the Agreement and upon the Court's suggestion, Plaintiff has executed a release of claims related to his compensation by Defendants, and the Agreement contains no confidentiality or non-disparagement provisions. *See, Barbecho v. M.A. Angeliades, Inc.*, 2017 U.S. Dist. LEXIS 48595, at *6 (S.D.N.Y. Mar. 30, 2017) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15cv1321, 2015 U.S. Dist. LEXIS 117179, at *2-3 (S.D.N.Y. Aug. 17, 2015) ("[T]he overwhelming majority of courts reject the proposition that FLSA settlements can be confidential."); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, at *8-9 (S.D.N.Y. Dec. 3, 2015) (rejecting a provision prohibiting plaintiffs from "mak[ing] disparaging or detrimental comments, statements or the like about Defendants").

The undersigned believes that the **$47,500** settlement is undoubtedly fair and reasonable result. Given the global COVID-19 pandemic, restaurants like those owned and operated by Defendants are experiencing financial problems. Moreover, Defendants contend that, should Plaintiff's claims be litigated, Defendants would be able to advance evidence confirming that Plaintiff was paid according to the law. Despite that, in the interests of avoiding litigation costs and reaching a mutually agreeable resolution, Defendants have not only agreed to pay more than the value of Plaintiff's FLSA claims in a reasonable six-month payment plan, but have also agreed to sign legally-binding confessions of judgment, ensuring that they will pay the agreed-upon sum. *See* **Exhibit 1**.[2] As this is Plaintiff's case, his desire to settle this action should certainly govern. Each party is represented by experienced counsel.

## III. The Court Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v.*

---

[1] Plaintiff alleges additional damages under the New York Labor Law which, though not subject to *Cheeks* approval, are also included in the negotiated settlement between the parties.

[2] The parties have agreed that Defendants will execute the Confessions of Judgment set forth in Exhibit C of the Agreement before a notary public and deliver the originals and electronic copies to Plaintiff's counsel by November 20, 2020. The parties have also agreed that by November 25, 2020, they will supplement this motion by filing a quick joint letter with the Court containing a copy of the notarized Confessions. The execution (and notarization) of all the Confessions is a material part of this agreement.

*Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Here, while Plaintiff alleges entitlement to damages, Defendants aver that he was properly paid at all times and therefore is not entitled to any damages.

In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* dispute in this matter. The settlement eliminates risks and ensures that the Plaintiff will receive a meaningful amount of wages due even after paying the legal fee.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in arm's length settlement discussions in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

*Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, because the Plaintiff left the Defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

## IV. Plaintiffs' Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount, Plus Expenses

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering unpaid overtime wages and money due for wage statements and wage notice violations. Under the retainer agreement, Plaintiffs' counsel would be entitled to a one third fee on the gross recovery of $47,500 which equates to approximately $15,833.33, plus the out of pocket costs and disbursements, which are $626.00[3], consisting of the following:

- Filing fee: 400.00
- Process Server (collectively for service of complaint on all Defendants): $226.00

Thus, Plaintiff's total requests fees and costs total $16,459.33. Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read *Cheeks* to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). Additionally, to the extent *Cheeks* did mention attorney's fees, it was in the context of an abusive attorney's fee that went as high as 43.6%, in contrast to the standard one third which is requested here. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d at 206. Nonetheless, in support of this fee request, the undersigned submits as follows:

As the Court will see, the undersigned expended 57.3 hours. *See* billing records attached as **Exhibit 2**. We are requesting a billing rate of $225.00 for myself. *See Peralta v. Regent Catering, Inc.*, No. 11-cv-06993 (DLI) (JO), Text-Only Order (E.D.N.Y. June 5, 2018) (awarding an hourly rate of $225.00); *Colon v.45-53 West 110 Street Housing Development Fund Corporation*, No 15-cv-03382 (AJP) (S.D.N.Y. November 2, 2016). "To determine the quality of representation, courts review, among other things, the recovery obtained, and the backgrounds of

---

[3] The Court has not requested any expense records. If they are needed, Plaintiff's counsel will gladly furnish them.

the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been employed as an associate with my office since July 2017. I received the degree of Juris Doctor from Maurice A Deane School of Law at Hofstra University in 2014 and am admitted to practice in the state courts of New York as well as the Southern and Eastern Districts of New York. I am fluent in both English and Spanish, which assisted in this matter as my client is a Spanish speaker. Prior to working at the Law Offices of William Cafaro, I was an associate at Frank & Associates, P.C. and later at Borrelli & Associates, P.L.L.C. where I worked almost exclusively on collective and class action wage and hour litigation.

At the requested rate, Plaintiff's counsel's total lodestar is $12,892.50. Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used in order to compensate Plaintiffs' counsel for time that is required administering the settlement. *See Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to **eight (8)** times the lodestar and in some cases, they have awarded multipliers that are even higher. *See*, *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also*, *Riveras, et al v. Bilboa Rest. Corp., et al.*, E.D.N.Y. Case. No. 17-cv-04430, DE 74 (Memorandum and Order approving a lodestar multiplier of 6.7). Here, the multiplier requested is approximately 1.23, which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage-and-hour litigation very well might. Reducing attorney's fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

6 | P a g e

## V. Conclusion

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorney's fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
 /s/ Louis M. Leon
By Louis M. Leon (LL 2057)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
LLeon@CafaroEsq.com